No. 24-1590

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| **The County Commission of Fayette County, West Virginia**<br><br>              - **Plaintiff - Appellant**<br><br>v.<br><br>**National Grid NE Holdings 2, LLC,** *et al.*<br><br>             - **Defendants – Appellees.** | On appeal from a final judgment of the U.S. District Court for the Southern District of West Virginia No. 2:21-cv-307 |

### REPLY BRIEF OF APPELLANT, THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA

---

NEELY & CALLAGHAN
Michael O. Callaghan
WV Bar No. 5509
1337 Virginia Street East, Suite 200
Charleston, WV 25301-3011
(304) 343-6500
mcallaghan@neelycallaghan.com
Counsel for Appellants

LAW OFFICES OF MICHAEL C. DONOVAN
Michael C. Donovan
CA Bar No. 153855
650 Castro Street, No. 120-413
Mountain View, CA 94041-2055
(415) 735-7441
mcd@legal-recoveries.com
Counsel for Appellants

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..............................................................................................2

TABLE OF AUTHORITIES....................................................................................3

    I. ARGUMENT………………………………………………...………………….5

        a. Simple Statement of What Gave Rise to this Case……………...……5
        b. Background on Open Dumping in West Virginia…………………….5
        c. Appellees' Responsive Brief on WVSWMA § 1(c)(1) Is an Attempt to Argue that the Holding Is Harmless Error……………………………8
        d. The District Court's Holding that the Governmental Plaintiff Must Prove that the Conditions Declared to be a *Per Se* Public Nuisance in Fayette Co. Ordinance 2018-01 Are a Public Nuisance at Common Law Before the Co. Can Obtain Judicial Abatement of those Conditions Is Pure Legal Error…………………………………………………..……11
        e. The District Court's Dismissal of the Governmental Plaintiff's Public Nuisance Abatement Claims Against Nominal Defendant EACC Prior to Allowing the Introduction of Any Evidence or the Presentation of Any Legal Argument in Support of those Claims is Pure Legal Error..22
        f. The District Court's Dismissal of the Governmental Plaintiff's Claim for Judicial Abatement of Conditions that May Present an Imminent and Substantial Endangerment to the Environment under RCRA § 7002(a)(1)(B) Is Plain Error………………………….…………………26
        g. Surface Defendants' Claims…………………………………………29

II.   CONCLUSION.................................................................................................31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................32

# TABLE OF AUTHORITIES

**Cases:**

3,*Pavone v. NPML Mortgage Acquisitions, LLC*, 874 S.E.2d 21 (W. Va. 2022)...29

*Hadacheck* v. *Sebastian*, 239 U.S. 394, Syllabus # 1 (1915)……………….…13

*Hock* v. *City of Morgantown*, 253 S.E.2d 386, 388 (W.Va. 1979). 30

*Interfaith Cmty. Org.* v. *Honeywell Int'l, Inc.*, 399 F.3d 248……………………..25

*Parker v. City of Fairmont*, 79 S.E. 660, 661-62 (W. Va. 1913)………………….14

*Sharon Steel Corp.* v. *City of Fairmont*, 334 S.E.2d 616 (W. Va. 1985)………….16

*St. Paul v. Gilfillan, 36 Minn. 298, 31 N.W. 49*………………………………...15

*State ex rel. Appalachian Power Co.* v. *Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965)………………………………………………………………………….… 21

**Federal Statutes:**

Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, as further amended (RCRA):

RCRA § 7002, 42 U.S.C. § 6972……………………………...…..26, 27, 28
Other federal statutes:

**State Statutes:**

West Virginia Solid Waste Management Act (WVSWMA):

W. Va. Code § 22-15-1........................................................................................7

W. Va. Code § 22C-3-2………………………………………………………………7

W. Va. Code § 22-15A-1(b)…………………………………………………………..7

Other Provisions of Code

    W. Va. Code § 7-1-3kk.........................................................19,20,21,30

    W. Va. Code § 7-1-3ff .................................................................30

# I.  <u>ARGUMENT</u>:

## a.  A Simple Statement of What Gave Rise to this Case

In the first half of the 20th century, without any federal, state or local governmental permit or authorization of any kind, Eastern Gas & Fuel Associates ("EGFA"), the corporate predecessor of Appellee/Defendant National Grid NE Holdings 2, LLC ("National Grid"), a major, for-profit coal mining company discarded multiple hundreds of tons of its **waste coal** – <u>not</u> "rocks" or soil that overlay coal or other mineral deposits – in a least five (5) separate locations of its own choosing, each proximate to surface waters, within the Johnson Fork – Loop Creek Watershed within Fayette County, WV. When it was done with its mining operations, National Grid simply walked away and left those unlined waste dumps where they lay.

## b.  Background on Open Dumping in West Virginia

Much of Appellees' Responsive Brief is about the intent of the W. Va. Legislature in its enactment of the W. Va. Solid Waste Management Act ("WVSWMA"), and in particular its enactment of the Legislative Declaration in

Section 1(c)(1) of that Act that the "uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people" into the W. Va. Code. The reality is that Open Dumping of Solid Waste is one of the most longstanding and severe environmental and public health protection threats in West Virginia, and one that the W. Va. Legislature has repeatedly recognized to be a very real and present threat to the people and environment of West Virgina and repeatedly attempted to redress.

The W. Va. Legislature, having come to grips with serious nature of the Open Dumping problem in the State, enacted in 1983 the WVSWMA, providing in Section 1(c) of that Act ["**Purpose and Legislative Findings**"] the following Legislative Declaration of Public Nuisance: "The Legislature . . . specifically finds: **(1) Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people.**"

Over a decade after its original enactment of the WVSWMA, the W. Va. Legislature in early 1994 again enacted into the General Law of this State a Legislative Declaration that the improper disposal of *Solid Waste* in West Virginia **is** a Public Nuisance:

> **The Legislature finds that uncontrolled, inadequately controlled and improper collection and disposal of solid waste (1) is a public nuisance and a clear and present danger to people; ***(4) decreases the value of**

**private and public property, causes pollution, blight and deterioration of the natural beauty and resources of the state and has adverse economic and social effects on the State and its citizens**; and **(5) results in the squandering of valuable nonrenewable and non-replenishable resources contained in solid waste.**

Section 2 of the W. Va. Solid Waste Management Board Act, W. Va. Code § 22C-3-2

[bolding emphasis added].

Later in 1994 the W. Va. Legislature made the following Legislative

Declaration of Public Nuisance in Section 1 of the W. Va. Counties and Regional

Solid Waste Authorities Act:

> The Legislature finds that **the improper and uncontrolled collection, transportation, processing and disposal of domestic and commercial garbage, refuse and other solid wastes** in the State of West Virginia results in**: (1) A public nuisance and a clear and present danger to the citizens of West Virginia**.

W. Va. Code § 22C-4-1 [bolding emphasis added].

Yet again in 2021, the W. Va. Legislature once again Open Dumping of Solid

Waste in West Virginia when it enacted the following provision into the A. James

Manchin Rehabilitation Environmental Action Plan codified at W. Va. Code,

Chapter22, Article 15A:

> **(b)The Legislature further finds** that the improper management of commercial and residential solid waste and **the unlawful disposal of such waste create open dumps that adversely impact the state's natural resources, public water supplies, and the public health, safety, and welfare of the citizens of the state.**

W. Va. Code § 22-15A-1(b) [bolding emphasis added].

Given this history and the historically-demonstrated commitment of the W. Va. Legislature to use the legal tools at its disposal to combat the rampant and dangerous practice of open dumping of Solid Waste in W. Va., the Appellees' oft-repeated mantra that the Legislative Declaration of Public Nuisance in WVSWMA § 1(c)(1) is "prefatory" and not intended to have any legal effect should be emphatically rejected by this Court.

The District Court would hear none of this because, as it repeatedly stated, it has ruled that WVSWMA § 1(c)(1) is "not enacted law and not enforceable."[1]

### c. Appellees' Responsive Brief on WVSWMA § 1(c)(1) Is an Attempt to Argue that the Holding Is Harmless Error.

In Section VI(c) of Responsive Brief, p. 25 – 33, Appellees support the legally unsupportable holding of the District Court that WVSWMA § 1(c)(1) is "unenacted and unenforceable," which holding adopted nearly wholesale the factual and legal propositions that Defendant National Grid presented to the District Court.

It is the Appellees – and not the Appellant – that does all the of the complained of "pivoting" and "shifting" of positions. Unable to defend the District Court's manifestly incorrect holding that WVSWMA § 1(c)(1) is "not enacted law and not enforceable", the Appellees in their Responsive Brief before this Court instead

_____

attempt to argue in vain the applicability to the facts of this case of the entirely distinct legal principle that "prefatory" and "purpose" statements in legislation cannot properly alter or expand unambiguous, substantive provisions of the legislation in question.  But, this plainly is not what the District Court held below.  It repeatedly asserted the legally incorrect holding that the unambiguous Legislative Declaration of Public Nuisance in WVSWMA § 1(c)(1) is "not enacted law and not enforceable."  Further, the Appellant/Governmental Plaintiff never asserted below, and does not now assert, that WVSWMA § 1(c)(1) in any way alters or expands any of the substantive provisions of the WVSWMA.  Rather, that subsection plainly and unambiguously sets forth the declaration of the W. Va. Legislature that the "uncontrolled, inadequately controlled and improper disposal of solid waste" IS a Public Nuisance in West Virginia.

Appellees' argument must fail.  It is true enough that most Legislative Findings have no substantive legal effect beyond articulating to the other Branches of Government and to the Public the conclusion(s) of the Legislature on any given point(s).  **It is equally true that an unambiguous and unconditional Legislative Declaration that a given act(s), omission(s) or condition(s) IS a Public Nuisance properly enacted by the W. Va. Legislature, the elected representatives of the**

**"citizen sovereigns"[2] of West Virginia, into the permanent, General Law of W. Va. has the legal effect of creating a *Per-Se* Public Nuisance as a matter of Law.**

The Appellees attempt to avoid this clear legal principle by simply ignoring it and hoping this Court will do the same. Despite their concerted efforts in the more than eight (8) pages of their Responsive Brief to press their disguised "harmless error" argument that the District Court really meant by its holdings below was that WVSWMA § 1(c)(1) is "prefatory" and has no legal effect because it would somehow impermissibly alter or expand the substantive regulatory (*i.e.,* permit requiring and enforcing) or punitive (*i.e.,* the civil and criminal penalty) provisions of the WVSWMA, three (3) critical and determinative legal points remain perfectly clear and undisputed: **First**, none of what the Appellee are now marketing in Section VI(c) of their Responsive Brief to this Court is what the District Court actually held below. It plainly and repeatedly held the WVSWMA § 1(c)(1) was "unenacted and unenforceable." **Second**, of the twelve (12) cases Appellee cite in Section VI.C of their Responsive Brief to support their assertion that the Legislative Declaration of Public Nuisance in WVSWMA § 1(c)(1) should come entirely to naught because is "prefatory" and would somehow impermissibly alter or expand the substantive

---

[2] W. Va. Const. Arts. II, § 2 ["**Powers of Government in Citizens**"] and III, § 3 ["**Rights Reserved to People**"] (2016).

regulatory and punitive provisions of the WVSWMA, **not a single one of those case related or referred to an enacted legislative declaration of Public Nuisance. Third,** the *Per-Se* Public Nuisance provision declared by the W. Va. Legislature in WVSWMA § 1(c)(1) would allow for the imposition of strict, joint and several, <u>remedial liability only</u> on all Persons who caused, created, substantially contributed to, or maintained the *Per-Se* Public Nuisance condition. Moreover, that *Per-Se* Public Nuisance provision could not as a matter of law alter or expand any of the regulatory or punitive liability provisions of the WVSWMA because it cannot in any way be imposed to further or accomplish any regulatory or punitive purpose. In sum, Public Nuisance abatement liability is solely and in every regard equitable in nature and <u>solely</u> remedial in purpose. This, in fact, is the very reason that Anglo-American law has always allowed for Public Nuisance Abatement liability to have the retrospective/retroactive effect that it has always had.

**d. The District Court's Holding that the Governmental Plaintiff Must Prove that the Conditions Declared to be a *Per Se* Public Nuisance in Fayette Co. Ordinance 2018-01 Are a Public Nuisance at Common Law Before the Co. Can Obtain Judicial Abatement of those Conditions Is Pure Legal Error.**

Section VI.D of the Appellees' Responsive Brief, p. 34 -41, presents this Court with a work of legal fiction. The message that this tale seeks to convey to this Court is that, principally because of one (1) sentence in an 1985 WVSCA decision, a

federal or state judge presiding over a governmental civil action seeking abatement of a condition of Public Nuisance declared in a duly-enacted and constitutionally valid County Ordinance properly promulgated by an elected W. Va. County Commission that is expressly authorized by W. Va. statute "to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated **anything which the commission determines** to be a public nuisance" may summarily decide that the legislatively declared Public Nuisance condition need not be abated because the Judge concludes that it is not a Public Nuisance <u>at common law</u>.

Appellees conflate in one mishmash of legal rhetoric two (2) entirely distinct legal applications of the Public Nuisance Doctrine in American law; namely, **(1)** the constitutionally-based authority of the Legislative Branch of a State Sovereign to enact **any** laws not offensive to the protected fundamental rights of the People necessary in its rationally-held view to afford adequate protection of the Public Health, Safety, Welfare and the Environment (commonly referred to as the "Police Powers" of the Sovereign) from a existing or imminently threatened **hazard (***i.e.,*** not, as the District Court repeatedly ruled, an imminent harm); and **(2)** the authority of the Judicial Branch of a State Sovereign under authority conveyed to it by statute, if any, **and** the common law to provide to litigants, public or private, equitable relief in the nature of judicial abatement of a Public Nuisance condition upon being

presented adequate proof of that litigant's entitlement to the equitable relief.  In its

Opening Brief Appellant directed this Court's attention to the following holding of

the United States Supreme Court:

> Although the police power of a state cannot be arbitrarily exercised, **it is to be remembered that it is one of the most essential powers of government, one that is the least limitable.**  It may, indeed, seem harsh in its exercise, and usually is harsh on some individual.  But the imperative necessity for its existence precludes **<u>any</u>** <u>limitation upon it when not exerted arbitrarily</u>.

*Hadacheck* v. *Sebastian*, 239 U.S. 394, Syllabus # 1 (1915) (Bolding and

Underlining emphasis added).  It is from this long-standing and fundamental

principle that this Court's objective analysis of Appellees' argument regarding the

exercise by the Legislative Branches of State and local government in W. Va. of the

Sovereign's "Police Powers" in Section VI.D of their Responsive Brief should

proceed.  To be perfectly clear, throughout the presentation to this Court of its

arguments in this Section of its Reply Brief, by its reference to "constitutionally valid

statutes or ordinances" the Appellant means "Police Powers" legislation that: **(1)**

enacts protective (*i.e.,* not regulatory or punitive) measure(s) to respond to hazards

to the Public Health, Safety, Welfare or the Environment rationally perceived by the

Legislative Body in order to accomplish the legitimate governmental objective of

securing adequate protection of the Public; **(b)** does not prohibit any act, omission

or condition expressly authorized by valid statute, regulation or governmental permit

or authorize any act, omission or condition expressly prohibited by valid statute, regulation or governmental permit ; and **(b)** is not intended to and does not operate to deprive any individual or protected class of individuals of fundamental rights. With this understanding, the Appellant asserts to this Court that its analysis of Appellees' legal fable should carefully consider each of the following legal points:

**Point One: Appellees Assertion that its position is supported by any WVSCA decision, including its Opinion in the *Sharon Steel.* case is wholly incorrect.** The Appellees' argument that W. Va law authorizes a judge to substitute his judgment of what hazards to the Public are unacceptable, whether based on the common law or anything else, for that of elected Legislative Body to which the W. Va. Legislature delegated the right to exercise the Sovereign's "Police Power" as set forth in a constitutionally valid Ordinance duly enacted by a W. Va. Co. Commission likely comes as no small surprise to this Court. Notwithstanding the decision of the District Court below, there simply is no such legal principle in W. Va. law. Appellees tell this Court at p. 35 – 36 of their Responsive Brief that their asserted legal position is supported, *inter alia*, by the WVSCA's holding in *Parker v. City of Fairmont*, 79 S.E. 660, 661-62 (W. Va. 1913). It most certainly is not.

Before the WVSCA in the *Parker* case was a municipality that purported to exercise its authority to abate a Public Nuisance by issuing Orders adopted on an *ad hoc* basis by a City Council pursuant to a municipal ordinance provision that did not

in fact describe the complained-of condition to be a Public Nuisance.  Here is what the WVSCA in *Parker* actually held:

> Nor can the granted power "to abate or cause to be abated anything which, in the opinion of a majority of the whole council shall be a nuisance," be properly viewed as authorizing the council to single out and condemn as to any sole individual that which is ordinarily lawful.  That provision can not rightly be construed to mean that the council may determine that to be a nuisance which is not such by the common law, by statute, **or by ordinance**.  It gives power to abate nuisances, not to determine what shall be considered nuisances.  It plainly relates to nuisances *per se*, those primarily branded as such **by the law**.  Dillon on Municipal Corporations, 5th edition, sections 690, 694; *St. Paul v. Gilfillan, 36 Minn. 298, 31 N.W. 49*.  The charter provision grants a police power of abatement; not an arbitrary power of determining that something is a nuisance which **by no law** is known to be such.  It is not reasonable to presume that the Legislature meant to grant such arbitrary power to the municipal authorities.

Id. at p. 690 [bolding & underlining emphasis added].  As the WVSCA made clear in above-quote, a Public Nuisance can be and is properly created under W. Va. law by "the common law, by statute, **or by ordinance**."  When referring to "by law" in above-bolded quotes from its *Parker* decision, the WVSCA was plainly referring to a Public Nuisance properly created by "the common law, by statute, **or by ordinance**."  Wholly contrary to the position advanced in the Appellees' legal fable, the WVSCA *Parker* decision did not hold that an ordinance properly enacted by an municipality pursuant to the Police Power of the State conveyed to it by a State-approved City Charter cannot proscribe a Public Nuisance under W. Va. law, whether or not that described condition is a Public Nuisance under the common law.

Appellees' rely on one sentence in the WVSCA's 1985 decision in *Sharon Steel Corp.* v. *City of Fairmont*, 334 S.E.2d 616 (W. Va. 1985), albeit a sentence that does not even come close to creating the legal effect ascribed to it by Appellees. As Appellant pointed out to this Court in its Opening Brief, in the *Sharon Steel* case the WVSCA was dealing with a facial (*i.e.,* **not** an "as applied" to any specific act or facility) challenge to a municipal ordinance enacted pursuant to W. Va. Code § 7-12-5(23) that declared the permanent disposal of Hazardous Waste within the city limits to be a Public Nuisance. In its opinion, the WVSCA made clear that the whole field of Hazardous Waste Management (*i.e.,* the generation, treatment, storage and disposal of Hazardous Waste) is comprehensively regulated by literally multiple hundreds of pages of federal and state regulations, some of which require various Hazardous Waste Management acts, a few of which specifically authorize various act, and most of which prohibit a whole lot of very specific acts. Against this complex background and without having any particular act, condition or facility before it to consider, the WVSCA upheld the municipal ordinance as a valid exercise of the municipality's authority under W. Va. Code § 8-12-5(23). In doing so, the *Sharon Steel* Court held:

> **We agree with the City's assertion that a municipality has the authority to declare the improper permanent disposal of hazardous wastes a public nuisance under W. Va. Code, 8-12-5(23)**, which empowers municipalities "to provide for the elimination of hazards to public health and safety," where the term "hazardous waste" in the ordinance is defined,

in part, as material which poses a substantial present or potential hazard to human health or the environment.

Id. at p. 487 (bolding emphasis added).  The *Sharon Steel* Court went on to hold:

> **It is generally recognized that even though a municipality has the power to enact an ordinance declaring some activity or thing to be a nuisance, such a declaration does not mean that the municipality is relieved of its burden to show that the activity or thing is in fact a nuisance when it seeks to enforce its ordinance.** [internal citations omitted].

Id at p. 625.  The one sentence highlighted in the foregoing quote from the WVSCA's *Sharon Steel* case forms the only real basis for the Appellees' argument that judges in governmental Public Nuisance abatement cases in W. Va. can decide that what the legislative body declared to be a Public Nuisance in a constitutionally valid Ordinance duly enacted pursuant to the Sovereign's "Police Power" conveyed to it by the W. Va. Legislature by valid W. Va. statute is not a Public Nuisance under the common law or whatever and, therefore, need not be abated.  As the Appellant/Governmental Plaintiff explained in its Opening Brief that is simply not what the WVSCA held in the *Sharon Steel* case.  Instead, it held that when, in the context such as that present in the *Sharon Steel* case (which involved a facial challenge to the municipal ordinance), a municipality goes to court to secure judicial abatement of a specific instance of the declared Public Nuisance condition, it will be required to demonstrate that the specific act(s) or condition(s) sought to be abated is:  **(1)** a condition actually declared to be Public Nuisance in the Ordinance; and **(2)**

not an act(s) or condition(s) expressly authorized by valid federal or state statutes. or regulations. This is what the WVSCA *Sharon Steel* decision meant when it held that "such a declaration [of Public Nuisance in a municipal ordinance] does not mean that the municipality is relieved of its burden to show that the activity or thing is <u>in fact</u> a nuisance when it seeks to enforce its ordinance." The WVSCA confirmed that meaning when it made the following holding in its *Sharon Steel* decision:

> Therefore, we conclude that while the ordinance declares the permanent disposal of hazardous wastes, as therein defined, within the City of Fairmont to be a public nuisance, **the issue of whether a given site is a public nuisance is a question of fact dependent upon the circumstances existing at such site.** We, however, affirm the power of the City to enact such an ordinance as we believe by its terms, under the definition of "hazardous waste," a common law nuisance is defined.

Id. at p. 626 [bolding emphasis added]. The *Sharon Steel* Court plainly did not mean, as Appellees would have this Court hold and as the District Court held below, that judges in governmental Public Nuisance abatement cases have some form of Super Legislative powers based upon the common law or whatever to decide whether the condition legislatively declared to be a Public Nuisance in a duly enacted Ordinance is or is not enough of a hazard to be a Public Nuisance within the territorial jurisdiction of the elected Legislative Body that enacted the Ordinance. In support of this conclusion, this Court should also carefully consider each of the following points:

**Point Two:   Neither the Appellees nor the District Court ever explain under what recognized legal doctrine or theory the common law can ever be used to invalidate the unambiguous meaning of a constitutionally valid Statute or Ordinance duly enacted pursuant to the Sovereign's "Police Powers" (that are themselves constitutionally based).**  This point speaks for itself, particularly in view of the well-recognized fact that the Legislature can and very frequently does alter or abrogate the common law entirely by its enactment of valid legislation as it sees fit.  Not the other way around.  This Court should, however, take note of the fact what Appellees, in their argument on p. 36 and in footnote 9 of their Responsive Brief, attempt to portray this purported Super Legislative authority of judges in governmental Public Nuisance abatement cases as a "core limitation on the county powers to declare Public Nuisance outside the common law."  This is pure smoke and mirrors.  If it were the law, and it most definitely is not, what the Appellees' legal fable actually would do is **allow judges in governmental Public Nuisance Statute or Ordinance enforcement actions simply to abrogate the constitutionally-based authority of the <u>W. Va. Legislature</u>**:  **(1)** to itself declare by constitutionally valid legislation what is a Public Nuisance in W. Va. wholly without regard to the common law; and **(b)** to convey to the elected Governing Bodies of the political subdivisions of the State the legal right to exercise the constitutionally-based "Police Powers" of the Sovereign "to abate or cause to be abated anything which the

commission determines to be a public nuisance" – all of this supposedly based solely upon some judge's views about the common law.

**Point Three: Unlike a W. Va. municipality acting pursuant to its authority under W. Va. Code § 8-12-5(23), the County Commission of a W. Va. County, such as the Appellant herein, acting pursuant to W. Va. Code § 7-1-3kk, does <u>not</u> have to go to court to enforce its Ordinance.** In W. Va. Code § 7-1-3kk the W. Va. Legislature conveyed to W. Va. counties legal authority both to "issue Orders" and to "take other appropriate and necessary actions for the elimination of hazards to public health and safety;" both legal authorities <u>not</u> conveyed to W. Va. municipalities. Accordingly, a W. Va. County under W. Va. Code § 7-1-3kk, pursuant to which a W. Va. County Commission may enforce it Ordinance by issuing Public Nuisance abatement Ordersor by summarily abating the Public Nuisance condition itself and recovering the costs of the that abatement from Responsible Parties pursuant to its Ordinance.

**Point Four: Nothing in the W. Va. Constitution or any decision of the WVSCA, specifically including its *Parker* and *Sharon Steel* decisions, holds that any court, state or federal, has authority under the common law to refuse to enforce a constitutionally valid Legislative Declaration of Public Nuisance <u>by the W. Va. Legislature</u> set forth in a valid State statute solely because that court determines that the act(s) or condition(s) described in the Legislative**

**Declaration of Public Nuisance does not constitute a Public Nuisance at common law.**  Since this point of law is manifestly true, it is important that this Court note that neither the Appellees nor the District Court explain under the Appellees' legal fable what legal theory or doctrine authorizes a court to disregard the constitutionally valid provisions of W. Va. Code § 7-1-3kk authorizing a W. Va. County Commission "to abate or cause to be abated <u>**anything** which the commission determines to be a public nuisance</u>," particularly in light of the plain fact the authority of the W. Va. Legislature to enact W. Va. Code § 7-1-3kk is derived directly from the W. Va. Constitution and not from the common law.

**Point Five:  Since the WVSCA has clearly held that "The exercise of the police power cannot be circumscribed within narrow limits <u>nor can it be confined to precedents resting on conditions of the past.</u>"** *State ex rel.* ***Appalachian Power Co.*** **v.** ***Gainer***, **149 W. Va. 740, 143 S.E.2d 351 (1965) (quoting** ***Farley v. Graney***, **146 W.Va. 22, [Bolding emphasis added], neither the Appellees nor the District Court explain why, under their legal fable, the WVSCA would allow judge-made law from historical case (*i.e.,* the common law) to supplant a current declaration a Public Nuisance by an elected Legislative Body made in a constitutionally valid, duly enacted Ordinance.**  It is apparent that the construction of the WVSCA's *Sharon Steel* holding proffered by Appellees and upheld by the District Court is wholly incompatible with the

WVSCA's stated position that the State's Police Powers "cannot be confined to precedents ruling on conditions of the past.

The District Court's held that the "the County is within the bounds of its statutory authority so long as the 2018 Ordinance codifies the common law doctrine of public nuisance." ECF No. 575 at 27 and ECF 1007 at 24. As the Appellee/Governmental Plaintiff has demonstrated in this Reply Brief, that holding is plain legal error not supported by either of the WVSCA's decisions in *Parker* or *Sharon Steel*.

Because of this holding by the District Court, and despite the fact that the Public Nuisances declared in Sections V(a)(10), V(a)(17), and V(b) of the 2018 Ordinance pursuant to which the County asserted *Per Se* Public Nuisance abatement below do not require any proof of "environmental harm," the District Court dismissed all of those claims because it determined that those claims did not assert a "common law public nuisance" because the Governmental Plaintiff purportedly failed to demonstrate any "environmental harm." This is plain error requiring reversal by this Court.

**e. The District Court's Dismissal of the Governmental Plaintiff's Public Nuisance Abatement Claims Against Nominal Defendant EACC Prior to Allowing the Introduction of Any Evidence or the Presentation of Any Legal Argument in Support of those Claims is Pure Legal Error.**

In its Opening Brief, the Appellant appraised this Court of the fact that the District Court dismissed all of Plaintiff's Public Nuisance claims against Nominal Defendant EACC, including it claims for abatement of *Per Se* Public Nuisance conditions declared in the 2018 Fayette Co. Ordinance, before it ever allowed the introduction of **any** evidence or the presentation of any legal arguments on those claims. Notwithstanding the fact the County's *Per Se* Public Nuisance claims under the Ordinance did not include any element of "environmental harm," the District Court made this ruling based wholly upon its determination that the Governmental Plaintiff failed to prove the existence of common law Public Nuisance because, in its view, the County failed to prove the existence of "environmental harm."

The Appellees' efforts in their Responsive Brief to support this holding of the District Court begins on p. 51 of that Brief with an attempt to assert that the County waived its right to challenge the dismissal of its claims because its Statement of Issues in its Opening Brief mentions only the District Court's granting of the stay of all insurance claims that lasted until the final dismissal of the Governmental Plaintiff's entire case. Appellees attempt to advance this argument despite the fact Appellant's argument in Section F of its Opening Brief clearly and plainly addresses its assertion that the District Court's dismissal of its claims against Nominal Defendant EACC is error. The clerical error that resulted in an older heading (that mentions only the stay of the insurance matters and not the final dismissal of those

23

claim) being attached to the argument set forth in Section F is the reason that the same older/incorrectly limited heading appears in the Statement of Issues in the Appellant's Opening Brief. Nonetheless, the argument presented in Section F of Appellant's Opening Brief clearly addresses the County contentions regarding the dismissal of its claims against Nominal Defendant EACC.

Next, at both p. 13 and p. 51 of their Responsive Brief Appellees assert the following: "Finally, having determined that the County failed to establish that the AML Piles caused environmental harm, the district court properly found that the County's direct action claims against EACC's insurers lacked viability" Despite this assertion by the Appellees, and notwithstanding the Governmental Plaintiff's response [ECF 1011] to the District Court advising that the Court had never allowed any evidence to be introduced on the claims against Nominal Defendant EACC, all that the District Court said or did about the claims against Nominal Defendant EACC (as opposed to its lengthy statement of reason for dismissing all claims against Defendant National Grid) was to dismiss the County's Second Amended Complaint [ECF 1016].

For its part with respect to the District Court's dismissal of its claims against Nominal Defendant EACC, the Appellant will only add to its argument presented in its Opening Brief the following statements. There can be no real debate in this case that, unlike Defendant National Grid, Nominal Defendant EACC, which operated

the real property at from its creation in 1963 until it sold that property years into the 22nd Century and which owned that real property from January 1, 1966 until years into the 22nd Century, violated WVSWMR §§ 1.6 and 7.2 at all times from and after, at the latest, June 2, 1996 until it sold the real property involved by allowing an unlined and uncontrolled Open Dump of Solid Waste to exist on its real property in Fayette County. This fact alone establishes that the conditions existing at each of the EACC-owned 5 Gob Piles is a Public Nuisance as declared in Section V(17) of Fayette Co. Ordinance No. 2018-01, an Ordinance provision that does not require any element of proof of any "environmental harm." Finally on this point, there can be little doubt that Ordinance § V(17), which declares "knowingly allowing any illegal activity on, or knowingly permitting the use for any illegal activity, act, or omission of, any property within Fayette County" to be a *Per Se* Public Nuisance in Fayette Co., states a Public Nuisance recognized by W. Va. common law since the District Court relied heavily on the fact that Defendant National Grid did not violate the WVSWMR for determining that the claims against it did not state a W. Va. common law Public Nuisance.

Accordingly, the Appellant asserts that the District Court's dismissal of its claims against Nominal Defendant EACC is plain legal error requiring reversal by this Court.

**f. The District Court's Dismissal of the Governmental Plaintiff's Claim for Judicial Abatement of Conditions that May Present an Imminent and Substantial Endangerment to the Environment under RCRA § 7002(a)(1)(B) Is Plain Error.**

Except for adding the arguments about the following 2 Points, the Governmental Plaintiff rests its case against the District Court's dismissal of its claims under RCRA § 7002(a)(1)(B) on the matters and arguments presented in its Opening Brief.

**Point 1:  Throughout its analysis of the Appellant's claims under RCRA § 7002(a(1)(B) [the "RCRA ISE Claims"], the District Court incorrectly both assumes and states that some proof of environmental harm or "imminent environmental harm" is required.**

Federal courts around the country addressing the elements of proof necessary to impose liability pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), versus requiring a remedy for an "imminent and substantial endangerment" under that same section, have recognized that they have been empowered by Congress to take preventative action in order to prevent and abate **the risk of harm**, and no showing of harm or imminent harm is required.

Thus, whether contamination **may** present an "imminent and substantial endangerment to health **or** the environment" is a **qualitative** question, not a quantitative one.   To expect a "Citizen Suit" plaintiff, who almost always does not have control of the site from which toxic pollutants are spewing forth, and who often

does not have the resources of the polluter defendants, to conduct a final risk assessment to fully quantify the identified risk posed by the endangerment would be putting the cart before the horse and does not coincide with Congress' intent.

Accordingly, the following holding by the District Court, quoted at p. 25 of the Appellees' Responsive Brief, incorrectly requires proof of "harm" or "imminent potential harm:"

> Through Dr. Simonton's conclusory statements and lack of evidence, the **County has failed to establish that there is any harm or serious and imminent potential harm** that is affecting the public as a result of the contamination stemming from the [Gob Piles] in the Subject Watershed.

JA1746; JA1518; JA1418-1424; JA1393-1398). This holding is legal error. What is required by RCRA § 7002(a)(1)(B) is proof of the imminent risk of harm, even if actual harm lies well into the future or may never occur.

**Point 2: The District Court Holding that the Term "Substantial" in RCRA § 7002(a)(1)(B) Requires Proof that the Endangerment is "Serious" Is Legal Error.**

The term "substantial" as used by Congress in that statute is a

**QUALITATIVE AND NOT QUANTITATIVE TERM.**

The most frequently quoted example of both that careful course of judicial scrutiny and of the holding that the term has only a qualitative meaning is the 2005 decision of the Third Circuit in *Interfaith Cmty. Org.* v. *Honeywell Int'l, Inc.*, 399 F.3d 248. In that case, the Third Circuit rejected a district court's articulation of the

requirements of RCRA § 7002(a)(1)(B) as including required showings by the Plaintiff that: **(1)** "a population is at risk;" and **(2)** "the contaminant is present at levels above that considered acceptable by the state" holding:

> **These definitions do not support one particular type of quantification measurement, such as the District Court's requirement that there be an exceedance of state standards.** . . . As noted, the word "substantial" is not defined by the statute or its legislative history, and we have not found any binding authority which stands contrary to this analysis. It is thus difficult to see how § 6972(a)(1)(B) justifies the kind of hurdle created by the District Court's third quantitative requirement - let alone the even higher requirements for "substantial" that Honeywell argues for, without citation.

*Id.* at 256-260 [bolding emphasis added].

Continuing on its line of analysis rejecting a quantitative meaning to the word "substantial" in RCRA § 7002(a)(1)(B), the Third Circuit held:

> **[A]s we have noted, there is no definition or explanation of the meaning of "substantial," but a discussion of RCRA's amendments observes that § 6972(a)(1)(B) is "'intended to confer upon the courts the authority to eliminate any risks posed by toxic wastes,'" S. Rep. No. 98-284, 98th Cong., 1st Sess. at 59 (1983) (quoting *Price*, 688 F.3d at 213-14), and further that courts should "recogniz[e] that risk may be assessed from suspected, but not completely substantiated, relationships between imperfect data, or from probative preliminary data not yet certifiable as fact." *Id.* (internal quotations and citations omitted). This supports neither the District Court's particular quantitative requirement nor the even higher and more narrow quantitative standards that Honeywell would have us impose.**

*Id.* at 260 [bolding emphasis added].

Applying to the facts of this case the qualitative meaning of the term "substantial" articulated by the Third Circuit in *Interfaith Cmty. Org.* (*i.e.*, "having substance," real and "not imaginary"), and recognizing that Congress intended that "**courts should recogniz[e] that risk may be assessed from suspected, but not completely substantiated, relationships between imperfect data, or from probative preliminary data not yet certifiable as fact,**" it becomes clear that this Court should and must reject Appellees' contention and the District Court's holding that the Governmental Plaintiff must prove some specific and detailed quantitative showings of harm.

For these reasons, this Court should reverse the District Court's dismissal of the Appellants RCRA ISE claims.

### g. Surface Defendants' Claims

As regards the Surface Defendants' arguments made in an effort the support the District Court's statement that the County lacks "standing" to raise its claims and issues against the Surface Defendant, the Appellant states the following to this Court. The District Court and the Surface Defendants are incorrect in claiming that Appellant has no standing to challenge the deeds. While it is generally true that under W. Va. property law, "[a] litigant who is not a party" or "intended to benefit" from a real property conveyance "lacks standing to challenge [it]." *See* Syl. Pt. 3, *Pavone v. NPML Mortgage Acquisitions, LLC*, 874 S.E.2d 21 (W. Va. 2022). But

here, the Appellant stands in a very different position. It is required by law to maintains the relevant deeds that were filed by the Surface Defendants. In carrying out essential governmental functions, ranging from taxation matters, supervisions of Special Service District and Public Service Districts ("PSDs"), and, as in this case, the investigation of known or suspected conditions of a public nuisance, the Appellant must rely on the accuracy of the deeds to determine who owns what real property within Fayette County. The answer to that question was greatly confused by the deeds filed by the Surface Defendants to such a point that, as argued in the Appellant's Opening Brief, it led to the Surface Defendants themselves being unable to articulate why they did not own the reserved tracks. Under W. Va. real property law, "certainty . . . is the preeminent compelling public policy to be served." *Hock* v. *City of Morgantown*, 253 S.E.2d 386, 388 (W.Va. 1979). "Certainty" was devoid in the deeds filed by the Surface Defendants and Appellant interpreted the deeds as well as it could. The very need, imposed upon it by law[3] as a political subdivision of the State, to rely on the accuracy of those deed for determining the ownership of real property within Fayette Co. provides the Appellant with standing to assert the positions it did below.

---

[3] *Inter alia*, W. Va. Code §§ 7-1-3kk and 7-1-3ff.

II.    CONCLUSION

For the reasons set forth above, this Court should reverse the District Court and remand this matter.

Respectfully submitted,

Date:  December 27, 2024          /s/  *Michael O. Callaghan*

WV Bar No. 5509
NEELY & CALLAGHAN
1337 Virginia Street East, Suite 200
Charleston, WV  25301-3011
Telephone: (304) 343-6500
Facsimile: (304) 343-6528
mcallaghan@neelycallaghan.com

Counsel for Appellants

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

No. 24-1590

*County Commission of Fayette County, West Virginia v National Grid NE Holdings 2, LLC, et al.*

The foregoing REPLY BRIEF OF APPELLANT THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of authorities, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments) the brief contains 6472 words. *See* Fed. R. App. P. 32(a)(7)(B) & 32(f).

The foregoing brief also complies with the typeface and type style requirements because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font. *See* Fed. R. App. P. 32(a)(5), 32(a)(6).

Date: December 27, 2024                    /s/  *Michael O. Callaghan*

WV Bar No. 5509
NEELY & CALLAGHAN
1337 Virginia Street East, Suite 200
Charleston, WV 25301-3011
Telephone: (304) 343-6500
Facsimile: (304) 343-6528
mcallaghan@neelycallaghan.com
Counsel for Appellants